## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
BELIANA M. C.                :    Civ. No. 3:21CV00464(SALM)
                             :
v.                           :
                             :
COMMISSIONER OF SOCIAL       :
SECURITY                     :    February 28, 2022
                             :
-----------------------------x
```

## <u>RULING ON CROSS MOTIONS</u>

Plaintiff Beliana M. C. ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to remand for further administrative proceedings. [Doc. #21]. Defendant moves for an order affirming the decision of the Commissioner. [Doc. #29].

For the reasons set forth below, defendant's Motion to Dismiss **[Doc. #8]** is **DENIED**; plaintiff's Motion to Reverse the Decision of the Commissioner and/or to Remand to the Commissioner **[Doc. #21]** is **DENIED**; and defendant's Motion for Order Affirming the Decision of the Commissioner **[Doc. #29]** is **GRANTED**.

## I.   __PROCEDURAL HISTORY__[1]

Plaintiff filed an initial application for DIB on July 24, 2017. See Certified Transcript of the Administrative Record, Doc. #16, compiled on July 25, 2021, (hereinafter "Tr.") at 22, 71, 286-93. Plaintiff filed an initial application for SSI on February 23, 2019.[2] See Tr. 309-26. In both applications, plaintiff alleged disability beginning February 1, 2017. See Tr.

---

[1] In compliance with the Standing Scheduling Order, plaintiff filed a "Statement of Facts," see Doc. #22, to which defendant filed a responsive Statement of Facts. See Doc. #29-2.

[2] The ALJ's decision refers to plaintiff's claims for DIB and SSI together, stating that "[t]hese claims were denied initially on March 19, 2018, and upon reconsideration on September 10, 2018." Tr. 22. However, because plaintiff's application for SSI was filed after these dates, it cannot be true that the SSI application was denied in conjunction with her DIB claim. Additionally, the record indicates that the denials related to the claim for DIB only. See Tr. 70-71, 83-84. Plaintiff's claim for SSI was nearly identical to her claim for DIB, alleging disabilities beginning February 1, 2017, of "Hand/Wrist/Arm Problem, High Blood Pressure, High Cholesterol + Hernia in upper thigh[.]" Tr. 318. A report of contact dated September 6, 2019, acknowledges that plaintiff filed both a DIB and SSI claim and instructs the ALJ to ensure the hearing decision is for both the DIB and SSI claims. See Tr. 425. When plaintiff was notified of her second hearing, to take place on July 2, 2020, the notice specified that "[t]he hearing also concern[ed]" plaintiff's application for SSI. Tr. 252. At that hearing, the ALJ again advised plaintiff that he was considering both her DIB and SSI claims. See Tr. 46. On August 27, 2020, counsel for plaintiff wrote a letter to the Appeals Council seeking review of plaintiff's claim, stating that the application was for both DIB and SSI. See Tr. 442. If plaintiff had any concern about the inconsistencies with the dates of her applications, she had the opportunity to raise the issue at that time, but chose not to do so. Accordingly, because this inconsistency does not affect the Court's analysis, and because neither party has raised the issue, the Court will not address it.

292, 310, 318. Plaintiff's application for DIB was denied initially on March 16, 2018, see Tr. 70-82, and upon reconsideration on September 8, 2018.[3] See Tr. 83-100.

On September 17, 2019, Administrative Law Judge ("ALJ") Matthew Kuperstein held a hearing. See generally Tr. 54-69. Plaintiff did not appear, but her attorney representative Danielle Choi appeared. See Tr. 57. Vocational Expert ("VE") Joseph Goodman and Medical Expert Billings Fuess appeared and testified by telephone at this hearing. See id. On July 2, 2020, the ALJ held a second hearing at which plaintiff, still represented by Attorney Danielle Choi, appeared and testified by telephone. See generally Tr. 39-53. VE Timothy Admenmatten was present but did not testify at this hearing. See generally id. On July 16, 2020, the ALJ issued an unfavorable decision. See Tr. 19-38. On January 28, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's July 16, 2020, decision the final decision of the Commissioner. See Tr. 3-7. This case is now ripe for review under 42 U.S.C. §405(g).

On April 3, 2021, plaintiff filed a complaint alleging:

---

[3] The ALJ's decision reflects an initial denial date of March 19, 2018, and a denial upon reconsideration on September 10, 2018. See Tr. 22. However, the record reflects an initial denial date of March 16, 2018, see Tr. 70, and denial upon reconsideration on September 8, 2018. See Tr. 83. This discrepancy does not affect the Court's analysis.

"The conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation." Doc. #1 at 2. Plaintiff further alleged:

> Pursuant to Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183 (2020), the office of Commissioner of Social Security is unconstitutional, as the President does not have removal power and the Social Security Administration is exempt from budget limitations, placing the agency wholly outside of the President's control. Since the Commissioner's office is unconstitutional, the ALJ's are not constitutionally appointed. Plaintiff is entitled to a new hearing with a constitutionally appointed ALJ.

Id. On May 27, 2021, defendant moved "to dismiss Plaintiff's constitutional claim for lack of subject-matter jurisdiction[.]" Doc. #8 at 1. On June 17, 2021, plaintiff filed a response to defendant's Motion to Dismiss, asserting that the Court has subject matter jurisdiction to consider plaintiff's constitutional claim. See Doc. #14. On October 26, 2021, defendant filed a supplemental brief in support of her Motion to Dismiss. See Doc. #25.

## II.  CONSTITUTIONAL CLAIM

As an initial matter, the Court addresses plaintiff's claim that she is entitled to a new hearing based on the contention that the ALJ who adjudicated her claim was unconstitutionally appointed.

On May 27, 2021, defendant filed a motion to dismiss plaintiff's constitutional claim pursuant to Federal Rule of

Civil Procedure 12(b)(1), asserting that plaintiff lacked standing because she could not demonstrate traceability or redressability. See Doc. #8-1 at 2; see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (holding that a plaintiff must have suffered an "injury in fact" that is "fairly traceable to the challenged action of the defendant[]" and "redress[able] by a favorable decision[]" in order to establish standing (citation and quotation marks omitted)). The sole basis for defendant's motion was the issue of standing; she did not address the merits of the constitutional claim. See generally Doc. #8-1. Plaintiff responded on June 17, 2021, asserting that her injury was both traceable to the alleged constitutional violation and would be redressed by a favorable decision. See generally Doc. #14.

During the pendency of defendant's motion, on June 23, 2021, the Supreme Court issued a decision relevant to plaintiff's constitutional claim. See Collins v. Yellen, 141 S. Ct. 1761 (2021). On October 26, 2021, defendant filed a supplemental brief addressing this decision and informing the Court that "Defendant no longer presses her threshold standing defense." Doc. #25 at 2. Rather, defendant sought to convert her Rule 12(b)(1) motion to a Rule 12(b)(6) motion for failure to state a claim. See id. at 3 n.1.

The Court is permitted to convert a Rule 12(b)(1) motion to

a Rule 12(b)(6) motion. This practice is appropriate only where "the motion is more properly addressed as one seeking dismissal for failure to state a claim." Henry v. Comm'r of Soc. Sec., No. 2:09CV00206(JMC), 2010 WL 11523750, at *3 (D. Vt. July 26, 2010), aff'd sub nom. Henry v. Soc. Sec. Admin., Comm'r, 456 F. App'x 13 (2d Cir. 2011) (collecting cases). When deciding whether to convert a 12(b)(1) motion, the Court considers whether the plaintiff had the opportunity to respond to the assertion that the Complaint fails to state a claim and whether plaintiff would be prejudiced by the conversion. See Fraternal Ord. of Police, Nat. Lab. Council, USPS No. 2 v. U.S. Postal Serv., 988 F. Supp. 701, 704 n.2 (S.D.N.Y. 1997) (The conversion of a Rule 12(b)(1) motion to a Rule 12(b)(6) motion was appropriate where "plaintiffs fully briefed the issue of whether they had stated a claim for which relief could be granted[.]"). Here, defendant's Motion to Dismiss was limited to the threshold issue of standing, as was plaintiff's response. Accordingly, it cannot be properly converted to a Rule 12(b)(6) motion for failure to state a claim. Indeed, the 12(b)(6) argument was raised only in the supplemental brief, to which plaintiff did not respond. Therefore, the Court declines to convert defendant's Rule 12(b)(1) motion into a Rule 12(b)(6) motion. Because defendant has withdrawn her standing argument, and no other arguments were raised in the Motion to Dismiss,

defendant's Motion to Dismiss **[Doc. #8]** is **DENIED**.[4]

However, plaintiff raised the constitutional claim in her complaint, but has since failed to pursue that claim. She did not respond to the Commissioner's supplemental brief in support of the Motion to Dismiss (Doc. #25). Plaintiff did not raise the constitutional claim in her Motion to Reverse the Decision of the Commissioner and/or to Remand to the Commissioner (Doc. #21). The Commissioner briefly addressed plaintiff's constitutional claim in her Motion to Affirm, stating: "Because that claim is not addressed in Plaintiff's current Motion to Reverse and Remand, it will not be further addressed here." Doc. #29-1 at 2 n.1. Plaintiff filed a reply to defendant's Motion to Affirm, but did not respond to defendant's statement that she would not address the constitutional claim, nor did plaintiff raise the constitutional claim in any other manner in her reply. See generally Doc. #30. Accordingly, the Court finds that

---

[4] Numerous courts have rejected similar standing arguments, finding plaintiffs to have satisfied both the traceability and redressability elements. See, e.g., Dante v. Saul, No. 20CV00702(KBM), 2021 WL 2936576 (D.N.M. July 13, 2021); Tafoya v. Kijakazi, No. 21CV00871(REB), 2021 WL 3269640 (D. Colo. July 29, 2021); Albert v. Kijakazi, No. 1:21CV00004(HRH), 2021 WL 3424268 (D. Alaska Aug. 5, 2021); Sylvia A. v. Kijakazi, No. 5:21CV00076(DGB)(BMGL), 2021 WL 4692293 (N.D. Tex. Sept. 13, 2021), report and recommendation adopted, 2021 WL 4622528 (N.D. Tex. Oct. 7, 2021); Dixie C. v. Kijakazi, No. 3:21CV00764(DLH)(AJF), 2021 WL 4822838 (N.D. Tex. Sept. 20, 2021), report and recommendation adopted, 2021 WL 4820764 (N.D. Tex. Oct. 15, 2021).

plaintiff has abandoned her constitutional claim.[5] See <u>Lipton v. Cnty. of Orange, NY</u>, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (collecting cases).

## III. <u>STANDARD OF REVIEW -- SOCIAL SECURITY APPEALS</u>

The review of a Social Security disability determination involves two levels of inquiry. "First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999) (citations omitted). Substantial evidence is evidence that "'a reasonable mind might accept as adequate to support a conclusion[;]'" it is "'more than a mere scintilla.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)

---

[5] The Court notes that, even if plaintiff were to pursue her constitutional claim, it is unlikely she would be successful. In light of the Supreme Court's decision in <u>Collins v. Yellen</u>, Courts that have addressed claims identical to plaintiff's constitutional claim have consistently ruled in favor of the Commissioner. <u>See</u>, <u>e.g.</u>, <u>Hutchens v. Kijakazi</u>, No. 1:20CV01124(LPA), 2021 WL 5834409, at *6-14 (M.D.N.C. Dec. 9, 2021); <u>Rhouma v. Comm'r of Soc. Sec.</u>, No. 4:20CV02823(TMP), 2021 WL 5882671, at *9-11 (N.D. Ohio Dec. 13, 2021); <u>Crossley v. Kijakazi</u>, No. 3:20CV02298(KM), 2021 WL 6197783, at *5-8 (M.D. Pa. Dec. 31, 2021); <u>Kathy R. v. Kijakazi</u>, No. 2:21CV00095(JDL), 2022 WL 42916, at *3-5 (D. Me. Jan. 5, 2022); <u>Mor v. Kijakazi</u>, No. 21CV01730(JMV), 2022 WL 73510, at *3-5 (D.N.J. Jan. 7, 2022).

(quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)). The reviewing court's "responsibility is always to ensure that a claim has been fairly evaluated[.]" Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

"The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly." Poole v. Saul, 462 F. Supp. 3d 137, 146 (D. Conn. 2020).

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity" by the ALJ to enable a reviewing court "to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The "ALJ is free to accept or reject" the testimony of any witness, but "[a] finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). "Moreover, when a finding is potentially

dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Leslie H. L. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00150(SALM), 2021 WL 5937649, at *2 (D. Conn. Dec. 16, 2021) (citation and quotation marks omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

## IV.   SSA LEGAL STANDARD

Under the Social Security Act, every individual meeting certain requirements who is under a disability is entitled to disability insurance benefits. See 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

10

continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c), §416.920(c) (requiring that an "impairment or combination of impairments ... significantly limit[] ... physical or mental ability to do basic work activities[]" to be considered "severe").

There is a familiar five-step analysis used to determine whether a person is disabled. See 20 C.F.R. §404.1520(a)(4), §416.920(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, [s]he has the residual functional
> capacity to perform [her] past work. Finally, if the
> claimant is unable to perform [her] past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

> Through the fourth step, the claimant carries the
> burdens of production and persuasion, but if the
> analysis proceeds to the fifth step, there is a limited
> shift in the burden of proof and the Commissioner is
> obligated to demonstrate that jobs exist in the national
> or local economies that the claimant can perform given
> [her] residual functional capacity.

Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum.

Servs., 360 F. App'x 240, 243 (2d Cir. 2010); see also Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The

residual functional capacity ("RFC") is "the most" a person is

still capable of doing despite limitations resulting from her

physical and mental impairments. 20 C.F.R. §404.1545(a)(1), 20

C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).
"[E]ligibility for benefits is to be determined in light of the
fact that the Social Security Act is a remedial statute to be
broadly construed and liberally applied." Id. (citation and
quotation marks omitted).

## V.   **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ
concluded that plaintiff had "not been under a disability within
the meaning of the Social Security Act from February 1, 2017,
through" July 16, 2020.[6] Tr. 23.

At step one, the ALJ found that plaintiff had "not engaged

---

[6] A claimant seeking DIB for a period of disability must, in
addition to presenting evidence of her disability, also satisfy
the "insured status" requirements of the Act. 42 U.S.C. §423(c).
To be entitled to benefits, plaintiff must demonstrate that she
was disabled prior to the expiration of her insured status,
i.e., as of her date last insured. See Pratts v. Chater, 94 F.3d
34, 35-36 (2d Cir. 1996); Shaw v. Chater, 221 F.3d 126, 131 (2d
Cir. 2000); see also 20 C.F.R. §§404.130, 404.131, 404.315(a),
404.320(b). Plaintiff's date last insured is September 30, 2018.
See Tr. 294. Accordingly, the relevant time period under
consideration with respect to plaintiff's DIB benefits is the
alleged onset date of February 1, 2017, through September 30,
2018, plaintiff's date last insured. See Tr. 23, 25. At the
second hearing on July 20, 2020, plaintiff amended her relevant
time period to "February 1st, 2017 until June 30th, 2019 ...
[because] she was able to regain more use of her hands and is no
longer disabled." Tr. 47-48. However, the ALJ does not reference
either of these earlier dates in his decision and instead
asserts that his evaluation is through the date of the decision,
July 16, 2020. See Tr. 23. Again, because this discrepancy does
not affect the Court's analysis and because neither party has
raised the issue, the Court will not address it.

in substantial gainful activity since February 1, 2017, the alleged onset date[.]" Tr. 25. At step two, the ALJ found that plaintiff suffered from the severe impairments of "left first carpal metacarpal arthritis, and osteoarthritis of the first carpometacarpal joint of the left hand." Id. The ALJ found that these impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28." Id. The ALJ found that "there is objective evidence in the medical record of" the following non-severe impairments: "knee pain, De Quervain's tenosynovitis, hypertension, hyperlipidemia, obesity, and alcohol dependence." Id. The ALJ found that these non-severe impairments "would have no more than minimally [a]ffected the claimant's ability to meet the basic demands of work activity." Id.

The ALJ "evaluate[d] the claimant's obesity pursuant to SSR 19-2p[]" and found that it had "not caused significant work-related physical or mental limitations[]" and had "no more than minimally impaired [plaintiff's] ability to function[.]" Tr. 25-26.

The ALJ further found that plaintiff's "medically determinable mental impairment of alcohol dependence disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities[.]" Tr. 26. "In making this finding," the ALJ "considered the broad functional

14

areas of mental functioning set out in the disability regulations for evaluating mental disorders" in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Id. As to the "Paragraph B" criteria, the ALJ found that plaintiff had a "mild limitation[]" in the areas of "understanding, remembering, or applying information[,]" "interacting with others[,]" and "concentrating, persisting or maintaining pace." Tr. 26-27. The ALJ found that plaintiff had "no limitation[]" in the area of "adapting or managing oneself." Tr. 27. The ALJ found that plaintiff's "medically determinable mental impairment" was nonsevere because it caused "no more than 'mild' limitation in any of the functional areas and the evidence [did] not otherwise indicate that there [was] more than a minimal limitation in the [plaintiff's] ability to do basic work activities[.]" Tr. 27.

At step three, the ALJ determined that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 28. The ALJ "specifically considered listing 1.02[]" in evaluating plaintiff's "fine and gross motor movements[.]" Tr. 28-29.

At step four, the ALJ found that plaintiff had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with further limitation to only frequent but not constant handling with the left upper

extremity." Tr. 29. The ALJ further concluded that plaintiff was "capable of performing past relevant work as a teacher aid." Tr. 32 (emphasis removed). The ALJ found that plaintiff's past relevant work as a teacher aid "does not require the performance of work-related activities precluded by the plaintiff's residual functional capacity[.]" Id. Because the ALJ found that plaintiff was capable of performing her past relevant work, he did not reach step five.

**VI.   DISCUSSION**

Plaintiff asserts that: (1) the RFC was not based on substantial evidence, "due to [the ALJ's] failure to include limitations consistent with his [psychiatric review technique] findings, or alternatively, explain why those limitations were excluded[;]" and (2) the ALJ improperly "evaluate[d] the opinion of Plaintiff's treating physician, William Crede, M.D., and consultative examiner Lisa Franklin-Zitzkat, Psy.D." Doc. #21-1 at 2. The Commissioner responds that "Plaintiff did not allege mental limitations during the disability process, nor has she proven that she required mental limitations in the RFC[,]" Doc. #29-1 at 1-2, and "[t]he ALJ [p]roperly [e]valuated the [o]pinions of William Crede, M.D., and Lisa Franklin Zizkat, Psy.D." Id. at 7.

The Court notes that plaintiff does not challenge the ALJ's step two findings. At step two, the only medically determinable

16

mental impairment identified by the ALJ was "alcohol dependence." Tr. 25. Accordingly, any references to plaintiff's mental impairment relate <u>only</u> to the diagnosis of alcohol dependence.

However, plaintiff expressly <u>disclaims</u> this diagnosis in the very same brief in which she argues that additional restrictions based on the diagnosis should have been included in the RFC. Plaintiff unequivocally states that her functionality was <u>not</u> limited as a result of alcohol dependence:

> This diagnosis of "uncomplicated alcohol dependence" was rendered by a student after she suggested she was drinking a few glasses of wine at night, but was cutting down. T 517. This diagnosis continued to be carried over despite no reports of it ever impacting her functionality. T 589-90 (taking a shot twice per week, occasionally wine, never more). And at the examination, Plaintiff reported drinking a glass of wine at night. T 572. The ALJ engaged in none of this analysis, discounting the Agency expert because a non-examining physician made some outlandish claims that having a glass of wine at night impacted her functionality.

Doc. #21-1 at 12. This argument suggests that plaintiff believes that the ALJ erred in finding that plaintiff's alcohol dependence was <u>even a medically determinable impairment</u>. By definition, a medically determinable impairment must "be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §404.1521; 20 C.F.R. §416.921. Thus, if plaintiff is arguing that there was no objective medical evidence supporting her diagnosis of alcohol dependence, or that

the "student" was not an acceptable medical source, she is likewise arguing that the ALJ should not have found her alcohol dependence to be medically determinable. If the ALJ did not find that plaintiff suffered from a medically determinable mental impairment, he would not have had any obligation or need to "determine the degree to which [plaintiff's] medically determinable mental impairment affects the four areas of mental functioning and [plaintiff's] ability to function independently, appropriately, effectively, and on a sustained basis[.]" 20 C.F.R. Pt. 404, App. 1 §12.00(A)(2)(b). And if the ALJ had not engaged in that analysis, he would not have had any opportunity or basis to include nonexertional limitations in the RFC. Thus, plaintiff's own argument suggests that the ALJ's RFC determination should not have included any nonexertional limitations. With this internal inconsistency in mind, the Court will address each of plaintiff's arguments in turn.

**A.    RFC Determination**

Plaintiff challenges the RFC determination solely as to the lack of nonexertional restrictions included in the RFC, arguing: "The ALJ here has found limitations in the majority of all mental domains, but has excluded them from the RFC without explanation or discussion." Doc. #21-1 at 5. Again, the ALJ found that plaintiff had only one medically determinable mental impairment: alcohol dependence disorder. See Tr. 26. The ALJ's

18

discussion of the four functional areas was with respect to alcohol dependence disorder. See Tr. 26-27. Accordingly, if any nonexertional restrictions in the RFC were warranted, they would necessarily be related to plaintiff's (disclaimed) alcohol dependence.

An ALJ is required to "'investigate the disabling effects of an impairment if the record contains evidence indicating that such an impairment might exist,' even where a Plaintiff did not list that impairment on his or her disability application." Guzman v. Berryhill, No. 15CV03920(VLB)(LMS), 2018 WL 3387319, at *21 (S.D.N.Y. June 12, 2018), report and recommendation adopted, 2018 WL 3384444 (S.D.N.Y. July 11, 2018) (quoting Rodriguez v. Barnhart, No. 05CV03383(SAS), 2006 WL 988201, *4 (S.D.N.Y. Apr. 13, 2006)). However, a plaintiff's failure to list an impairment on her disability application casts serious doubts as to whether plaintiff has any functional restrictions as a result of an impairment that the ALJ determines is otherwise indicated in the record. See, e.g., Sellers v. Heckler, 590 F. Supp. 1141, 1146 (S.D.N.Y. 1984) ("In addition, plaintiff's mental impairment, if any, was not raised by her in her initial application[.] ... Plaintiff's failure to allege a mental impairment until after the hearing casts further doubt on the existence of such a disability."); Beshaw v. Comm'r of Soc. Sec., No. 8:15CV00556(MAD), 2016 WL 4382702, at *7 (N.D.N.Y.

19

Aug. 16, 2016) ("Moreover, a plaintiff bears the burden to
establish her entitlement to benefits at the first four steps of
the evaluation, which Plaintiff has not done in this case in
regards to her obesity by failing to mention it as an impairment
and by her attorney's failure to raise the issue during the
hearing testimony."); Archambault v. Colvin, No.
2:15CV00225(CR), 2016 WL 6806230, at *9 (D. Vt. Nov. 17, 2016)
(finding "any error in failing to characterize Plaintiff's
mental impairments as severe" to be "harmless[]" because
"Plaintiff alleged disability due to her physical
limitations[]"); Cheverez v. Comm'r of Soc. Sec., No.
18CV00711(MWP), 2020 WL 561036, at *7 (W.D.N.Y. Feb. 5, 2020)
(finding plaintiff's argument "that the ALJ improperly
discounted Cheverez's treating providers' opinion about his
mental limitations[]" to be unpersuasive because his treating
providers did not find "that he suffered from any mental work-
related limitations[]" and "[t]ellingly, Cheverez himself does
not identify any specific limitations resulting from his mental
health impairments that were not considered by the ALJ or
accounted for in the RFC[]").

Although plaintiff challenges the ALJ's lack of functional
restrictions related to the impairment of alcohol dependence,
plaintiff did not claim that she suffered from alcohol
dependence at any point, from her initial application through

20

the hearings before the ALJ. Plaintiff's applications, at both the initial and reconsideration level, were limited to her physical conditions. See, e.g., Tr. 71-72 (Disability Determination Explanation at the Initial level indicating that the claim for disability on July 24, 2017, was filed due to "Hand/Wrist/Arm Problem[;]" "High Blood Pressure[;]" and "High Cholesterol"); Tr. 85 (Disability Determination Explanation at the Reconsideration level indicating that the claim for disability on July 24, 2017, was filed due to "Hand/Wrist/Arm Problem; High Blood Pressure; High Cholesterol[]"); Tr. 318, 325 (application for SSI completed by plaintiff on February 23, 2019, listing her "illnesses, injuries, or conditions[]" as "Hand/Wrist/Arm Problem, High Blood Pressure, High Cholesterol + Hernia in upper thigh, requires surgery").

Plaintiff also completed a form titled "Activities of Daily Living" in which she explained how her claimed disabilities impacted her daily activities. Tr. 339-46. Plaintiff did not indicate that alcohol dependence resulted in any limitations. The only nonexertional limitations mentioned relate specifically to her physical injuries; plaintiff stated that she has some trouble focusing due to her physical pain. See Tr. 344 (indicating she had impaired concentration because she is "always saying 'ouch' – can't focus"). Plaintiff completed a second form titled "Function Report – Adult" in which she was

21

asked to identify how her "illnesses, injuries, or conditions
limit [her] ability to work[.]" Tr. 386. Again, plaintiff
described limitations due to her physical condition, stating
that her "left hand has no usage[.]" Id. The only references she
made to nonexertional limitations throughout the form again
related to her physical limitations, indicating that she has
difficulties concentrating and understanding because of her
pain. See Tr. 391 (indicating she had impaired concentration
because she is "always in pain" and impaired understanding
because she was struggling with understanding "what's happening
to[] [her]"). Plaintiff also indicated that her "attention span
[wa]s off[,]" but this also appears to be related to her
physical condition, as it is consistent with the assertion that
she had trouble concentrating due to her physical pain. Id. The
remainder of the form indicates no limitations due to alcohol
dependence. See Tr. 386-93.

The conduct of plaintiff and plaintiff's attorney at the
hearings before the ALJ are similarly telling. At the first
hearing, the ALJ called Clinical Psychologist Billings S. Fuess
to testify as "a medical expert in the area of mental health."
Tr. 57. Plaintiff's attorney informed the ALJ she was "willing
to stipulate to Dr. [Fuess's] qualifications to testify as a
medical expert in the area of mental health[,]" but stated: "I
would note certainly there are some mental health issues going

on here, but I did think this was predominantly a physical case[.]" Tr. 60. Although the second hearing was limited in duration, plaintiff testified to her physical condition and did not speak to any mental limitations. See Tr. 40-53. At this hearing, plaintiff's counsel confirmed that the "record [wa]s complete," Tr. 46, and stated that plaintiff was "no longer disabled[]" because "she was able to regain more use of her hands[.]" Tr. 48. The ALJ asked plaintiff "why the functional limitations that [she] had during" the period of disability precluded her from working, giving plaintiff the opportunity to identify any exertional or nonexertional functional limitations. Tr. 48. However, plaintiff only identified functional limitations connected with the use of her hands. See id. Plaintiff's counsel also questioned plaintiff, but did not ask her any questions relating to any mental impairments or nonexertional restrictions. See Tr. 49-51. At the end of the hearing, the ALJ gave plaintiff's counsel a final opportunity to ask plaintiff any additional questions, but plaintiff's counsel declined to do so. See Tr. 52. Plaintiff's counsel then made a brief closing statement, again referencing only plaintiff's physical condition. Plaintiff "had a duty to prove a more restrictive RFC, and failed to do so." Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018).

23

Despite this ample history showing that plaintiff's claims were entirely physical in nature, plaintiff now asserts that the ALJ should have included restrictions based on mental limitations in the RFC. See Doc. #21-1 at 2-5. Plaintiff relies primarily on MacDonald v. Comm'r of Soc. Sec. as support for her argument that the ALJ's failure to include nonexertional limitations in the RFC requires remand after his finding of mild limitations in three out of the four functional areas identified in Paragraph B. See Doc. #21-1 at 4. However, MacDonald states: "[I]f the ALJ finds mild restrictions resulting from a nonsevere impairment, the ALJ must address those restrictions as part of his RFC analysis." No. 17CV00921(LJV), 2019 WL 3067275, at *3 (citations and quotation marks omitted) (emphasis added). Plaintiff is correct that an "RFC determination must account for limitations imposed by both severe and nonsevere impairments." Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012). However, this does not support the proposition that an ALJ must include a restriction in the RFC if, at step two, he finds mild limitations resulting from a nonsevere impairment. Rather, he must consider whether any functional restrictions exist because of the mild limitations, and, only if they do, incorporate those restrictions into the RFC. However, if an ALJ finds that no functional restrictions exist because of the

nonsevere impairment, he is not required to include any
restrictions in the RFC.

"In his step two analysis, the ALJ explicitly stated that
he considered Plaintiff's nonsevere impairments and that his
[RFC determination] accommodated them. While courts have
criticized similar statements as 'boilerplate,' 'lip service,'
and 'conclusory,' the ALJ did more here." Cromwell v. Comm'r of
Soc. Sec., No. 18CV01194(FPG), 2020 WL 409989, at *2 (W.D.N.Y.
Jan. 24, 2020) (quoting Reed v. Comm'r of Soc. Sec., No.
18CV00169(JWF), 2019 WL 4643605, at *3 (W.D.N.Y. Sep. 24,
2019); MacDonald, 2019 WL 3067275, at *3-4) (citations to the
record omitted). Here, the ALJ adequately explained his
reasoning for not including mental limitations in his RFC
analysis. In particular, he stated that (1) Dr. Zitzkat "did not
specify the extent that the claimant's alcohol use had on her
mental functioning[]" and the limitations identified by Dr.
Zitzkat were "not seen elsewhere in the record[;]" and (2) Dr.
Fuess determined "that the claimant has no mental limitation[,]"
which the ALJ found to be consistent with the record. Tr. 31.
Notably, the ALJ gave these explanations in the narrative
specifically addressed to his RFC determination. The ALJ's
opinion as a whole demonstrates that he considered any potential
nonexertional restrictions, and substantial evidence supports
his determination that none were necessary. Unlike in MacDonald,

this Court <u>can</u> "be certain that the ALJ actually considered [plaintiff's] mental issues when addressing her RFC." 2019 WL 3067275, at *4.

**B.   Evaluation of Medical Opinions**

Plaintiff next asserts that the ALJ erred by improperly finding that the opinions of plaintiff's treating physician, Dr. Crede, and consultative examiner, Dr. Franklin-Zitzkat, were unpersuasive. <u>See</u> Doc. #21-1 at 5-12. Defendant responds that "the ALJ properly evaluated the persuasiveness of" Dr. Crede's "opinion, specifically discussing supportability and consistency[.]" Doc. #29-1 at 7. Defendant further responds that "[s]ubstantial evidence also supports the ALJ's finding that the opinion of consultative examiner Dr. Zitzkat, was not persuasive" because "the limitations Dr. Zitzkat observed were not seen elsewhere in the record[.]" <u>Id.</u> at 9.

1.   <u>Applicable Law</u>

The SSA has enacted new regulations regarding the consideration of medical opinions for claims filed on or after March 27, 2017. <u>See</u> 20 C.F.R. §404.1520c; 20 C.F.R. §416.920c. Because plaintiff filed her application on July 24, 2017, <u>see</u> Tr. 22, 71, the new regulations apply to plaintiff's claim.

"Previously, the SSA followed the treating physician rule, which required the agency to give controlling weight to a treating source's opinion, so long as it was well-supported by

medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citation and quotation marks omitted). Under the new regulations, "no particular deference or special weight is given to the opinion of a treating physician." Quiles v. Saul, No. 19CV11181(KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021).

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning weight to a medical opinion, the ALJ must still articulate how he or she considered the medical opinions and how persuasive he or she finds all of the medical opinions." Jacqueline L., 515 F. Supp. 3d at 8 (citation and quotation marks omitted); see also 20 C.F.R. §404.1520c(a); 20 C.F.R. §416.920c(a). For applications filed after March 27, 2017, the ALJ evaluates medical opinions using the factors outlined in 20 C.F.R. §404.1520c(c)(1)-(5); 20 C.F.R. §416.920c(c)(1)-(5). See 20 C.F.R. §404.1520c(a); 20 C.F.R. §416.920c(a). "The factors of supportability ... and consistency ... are the most important factors" the ALJ "consider[s] when ... determin[ing] how persuasive [to] find a medical source's medical opinions[.]" 20 C.F.R. §404.1520c(b)(2); 20 C.F.R. §416.920c(b)(2).

When "articulat[ing] [the] consideration of medical
opinions[,]" the ALJ "will articulate ... how persuasive [he]
find[s] all of the medical opinions[.]" 20 C.F.R. §404.1520c(b);
20 C.F.R. §416.920c(b). In doing so, the ALJ "will explain how
[he] considered the supportability and consistency factors for a
medical source's medical opinions[.]" 20 C.F.R.
§404.1520c(b)(2); 20 C.F.R. §416.920c(b)(2). The ALJ will also
consider the medical source's "[r]elationship with the
claimant[;]" the medical source's "[s]pecialization[;]" and
"other factors that tend to support or contradict a medical
opinion[.]" 20 C.F.R. §§404.1520c(c)(3)-(5); 20 C.F.R.
§§416.920c(c)(3)-(5). However, the ALJ is "not required to[]
explain" how he evaluated these additional factors. 20 C.F.R.
§404.1520c(b)(2); 20 C.F.R. §416.920c(b)(2).

The new regulations acknowledge that "[a] medical source
may have a better understanding of [plaintiff's] impairment(s)
if he or she examines [plaintiff]" rather "than if the medical
source only reviews evidence in [plaintiff's] folder." 20 C.F.R.
§404.1520c(c)(3)(v); 20 C.F.R. §416.920c(c)(3)(v). Thus,

> [e]ven though ALJs are no longer directed to afford
> controlling weight to treating source opinions -- no
> matter how well supported and consistent with the record
> they may be -- the regulations still recognize the
> "foundational nature" of the observations of treating
> sources, and "consistency with those observations is a
> factor in determining the value of any [treating
> source's] opinion." Barrett v. Berryhill, 906 F.3d 340,

343    (5th    Cir.    2018)    (citing    20    C.F.R.
§§404.1520c(c)(3)(v), 416.920c(c)(3)(v)).

Shawn H. v. Comm'r of Soc. Sec., No. 2:19CV00113(JMC), 2020 WL
3969879, at *6 (D. Vt. July 14, 2020); accord Jacqueline L., 515
F. Supp. 3d at 7-8.

    2.   Analysis

        i.  *Dr. Crede*

The treatment notes indicate that Dr. Crede, who is an
M.D., treated plaintiff in a general practitioner capacity. See
Tr. 455-501. Dr. Crede completed a form titled "Physical
Assessment" relating specifically to plaintiff's diagnosis of
"[l]eft 1st carpal metacarpal arthritis[.]" Tr. 453. Dr. Crede's
opinion is a brief two-page opinion limited to this diagnosis.
See Tr. 453-54. It bears repeating that the only aspect of the
ALJ's RFC determination that plaintiff challenges is the failure
to include any restrictions relating to plaintiff's (disclaimed)
alcohol use disorder. See Doc. #21-1 at 2-5; Tr. 26-27. The only
mention of nonexertional restrictions in Dr. Crede's opinion is
limited to the question: "How often are your patient's symptoms
associated with their impairments severe enough to interfere
with the attention & concentration required to perform simple
work-related tasks?" Tr. 453. Dr. Crede opined that plaintiff
would "[o]ften" have attention and concentration issues due to
her physical pain. Id. Again, this does not address any

limitations that could be caused by plaintiff's (disclaimed) alcohol use disorder. Even if the ALJ improperly found Dr. Crede's opinion unpersuasive, that error would be harmless, as that opinion has no impact on plaintiff's sole RFC argument, that the ALJ should have included additional mental restrictions in the RFC because of her alcohol dependence diagnosis.

Assuming, arguendo, that Dr. Crede's opinion would be helpful to plaintiff had the ALJ found his opinion persuasive, the Court will consider whether the ALJ properly evaluated Dr. Crede's opinion. As outlined above, the new regulations governing plaintiff's claim require the ALJ to discuss the factors of supportability and consistency. See 20 C.F.R. §404.1520c(b)(2); 20 C.F.R. §416.920c(b)(2). As to supportability, the ALJ found that Dr. Crede's opinion was not supported because it "consist[ed] of conclusory statements with no rationale or references to supporting evidence." Tr. 31. "Thus, the ALJ correctly focused on whether Dr. [Crede] supported his opinion with relevant, objective medical evidence." Kathleen D. v. Comm'r of Soc. Sec. Admin., No. 3:20CV01374(SALM), 2022 WL 354553, at *6 (D. Conn. Feb. 7, 2022) (emphasis removed).

Plaintiff's argument as to supportability focuses on the ALJ's characterization of the form as "'check-the-box-style[,]'" arguing that "the ALJ improperly reject[ed] the opinion due to

it being in check box form." Doc. #21-1 at 7-8. "The nature of
an ALJ's inquiry in disability factfinding turns on the
substance of the medical opinion at issue -- not its form -- and
ultimately whether there is reasonable evidence in the record
that supports the conclusions drawn by the medical expert[.]"
Colgan v. Kijakazi, 22 F.4th 353, 361 (2d Cir. 2022). However,
"a treating physician's medical opinion is not entitled to
controlling weight where it is provided in a check-box form and
is unaccompanied by meaningful medical evidence in the
administrative record." Id. (emphasis added). Here, the ALJ's
discussion of Dr. Crede's opinion is unquestionably focused on
the substance and not the form, considering whether Dr. Crede's
opinion was accompanied "by meaningful medical evidence."
Although the ALJ mentioned that the form is in "check-the-box-
style[,]" he also appropriately evaluated Dr. Crede's opinion.
Tr. 31.

The bulk of plaintiff's argument that the ALJ improperly
found Dr. Crede's opinion to be unpersuasive, however, focuses
on the consistency factor. See Doc. #21-1 at 8-11. As to
consistency, the ALJ found that Dr. Crede's opinion was not
consistent with the record because "[t]he specific limitations"
identified by Dr. Crede "reflect a severe degree of physical
restriction that is not consistent with the medical evidence."

Tr. 31. The ALJ specifically pointed out the following
inconsistencies:

> For instance, Dr. Crede determined the claimant could
> walk no farther than 1 block, but the record shows the
> claimant reported she walks to the store to shop and has
> no difficulty climbing stairs. (Exhibit 10F, p. 9). Dr.
> Crede's determination that the claimant's symptoms would
> often interfere with her ability to maintain attention
> and concentration is purely speculative, as there is no
> evidence that Dr. Crede ever measured the claimant's
> attention span or concentration. (Exhibits 2F and 3F).
> Dr. Crede determined the claimant can never lift or carry
> any weight with her left hand, but can lift and carry up
> to 20 pounds with her right upper extremity. The
> undersigned accepts that the claimant has strength
> deficits in her left hand, but the evidence does not
> show she has no use of her left arm. The most recent
> evidence shows no treatment for, or complaints of, left
> arm pain. (Exhibits 9F, 10F, and 12F). Furthermore, the
> claimant shops for groceries and can carry a bag of
> groceries. (Exhibit 10F, p. 11). That same evidence
> further undermines Dr. Crede's determination that the
> claimant has not ability at all to reach or perform fine
> and gross manipulations with her left arm.

Id.

Plaintiff contends: "The ALJ provided a variety of
perceived inconsistencies between the opinion and the record,
but upon closer inspection, those are largely
mischaracterizations of the evidence." Doc. #21-1 at 6.
Plaintiff further refers to the inconsistencies the ALJ
identified as "illegitimate." Id. at 8. This argument amounts to
a disagreement with the manner in which the ALJ weighed the
evidence in the record, repeatedly referring to the ALJ's
citations to the record as "unrelated." See id. at 9-10.

Plaintiff is advocating for the Court to reweigh the evidence, which "the deferential standard of review prevents" the Court from doing. Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016); see also Hoadley v. Astrue, 503 F. Supp. 2d 466, 485 (D. Conn. 2007), report and recommendation adopted, No. 3:06CV00575(JCH), 2007 WL 4522467 (D. Conn. Dec. 18, 2007) ("The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner." (emphasis added)). Accordingly, the Court finds that the ALJ properly evaluated the supportability and consistency factors with respect to Dr. Crede's opinion.

ii.  *Dr. Zitzkat*

Plaintiff further asserts that the ALJ improperly found Dr. Zitzkat's opinion unpersuasive. See Doc. #21-1 at 11-12. It is unclear what the basis for plaintiff's argument is. Plaintiff appears to primarily take issue with the ALJ's finding that Dr. Zitzkat's opinion was not consistent with the record.

The ALJ discussed Dr. Zitzkat's opinion at multiple points throughout his opinion. He made clear why he found Dr. Zitzkat's opinion to be inconsistent with the record, stating: "The undersigned notes that Dr. Zitzkat's examination report reflects moderately to markedly impaired short-term memory. But the undersigned cannot find any other instances of the claimant exhibiting impaired memory. Further, the claimant had no trouble understanding medical instructions. She exhibits good insight

about her condition." Tr. 27 (citations omitted). He later reiterated: "[T]he limitations observed by Dr. Zitzkat are not seen elsewhere in the record." Tr. 31. Accordingly, the ALJ properly evaluated the consistency factor with respect to Dr. Zitzkat's opinion.

Though plaintiff does not assert that the ALJ did not properly evaluate the supportability factor with respect to Dr. Zitzkat's opinion, the Court notes that the ALJ also explained why he found Dr. Zitzkat's opinion not supported by objective medical evidence. He stated: "Dr. Zitzkat concluded the claimant would have marked difficulty responding appropriately to supervisors, co-workers, and the general public, but that limitation was evidently based on the claimant's self-reports, as Dr. Zitzkat's objective observations show the claimant was pleasant and co-operative, and had normal speech." Tr. 27. Additionally, he pointed out that although plaintiff "alleged a decline in attention span[,]" and Dr. Zitzkat found "mildly impaired attention span[,]" plaintiff "was engaged and asked and answered questions, which indicates she can persist and follow the flow of conversation." Id. Again, the supportability factor turns on whether the medical source's opinion is properly supported by objective medical evidence. See Kathleen D., 2022 WL 354553, at *6. The ALJ thus also properly evaluated the supportability factor with respect to Dr. Zitzkat's opinion.

Plaintiff further asserts that the ALJ's finding that Dr. Zitzkat's opinion was unpersuasive is error because plaintiff "should not be punished for a failure to understand or treat for her mental impairments." Doc. #21-1 at 11. It is unclear how the ALJ's finding that the limitations observed by Dr. Zitzkat were not reported elsewhere in the record amounts to a conclusion that the ALJ was "punishing" plaintiff for failure to seek treatment for her mental limitations. Again, the only medically-determinable mental condition identified is alcohol dependence, see Tr. 25, and plaintiff denies even having that condition. See Doc. #21-1 at 12. Plaintiff cannot plausibly argue that the ALJ is punishing her for not seeking treatment for her alcohol dependence when she maintains that any diagnosis of alcohol dependence is incorrect. Nonetheless, the record shows that plaintiff's treatment notes repeatedly refer to this condition, indicating that she did, in fact, receive treatment for it. See, e.g., Tr. 514, 517, 523, 530, 538-39. However, these notes do not ever indicate the presence of any functional limitations due to alcohol dependence, nor do they indicate any functional limitations based on any other mental condition. Accordingly, the ALJ properly found that any limitations found by Dr. Zitzkat were not consistent with the record, and was not "punishing" the plaintiff by finding as much.

Further, any limitations Dr. Zitzkat found are unrelated to alcohol use disorder, which plaintiff appears to agree with. See Doc. #21-1 at 11 ("Dr. Zitzkat could not even diagnose alcohol use disorder, as it was unclear if [plaintiff] met the criteria."). As with Dr. Crede, even if the Court found that the ALJ improperly found Dr. Zitzkat's opinion unpersuasive, that error would be harmless, because it would have no impact on the RFC where no other medically determinable mental conditions existed.

The ALJ's RFC determination "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (citation and quotation marks omitted). The purpose of the extensive administrative procedure associated with Social Security disability claims and the availability of judicial review is to ensure that every claimant is afforded the opportunity of a full and fair adjudication of her claim. If there are "inadequacies in the ALJ's analysis frustrate meaningful review[]" by the Court, remand may be appropriate. Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). However, where the Court is able to conclude from the ALJ's decision that a plaintiff was afforded a full and fair adjudication of their claim, the Court may affirm

the decision. Such meaningful review is possible here. The Court is able to determine that the ALJ thoroughly reviewed plaintiff's application and reached a conclusion without legal error and based on substantial evidence.

## VII. <u>CONCLUSION</u>

For the reasons set forth herein, defendant's Motion to Dismiss **[Doc. #8]** is **DENIED**; plaintiff's Motion to Reverse the Decision of the Commissioner and/or to Remand to the Commissioner **[Doc. #21]** is **DENIED**; and defendant's Motion for Order Affirming the Decision of the Commissioner **[Doc. #29]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 28th day of February, 2022.

_____/s/_____
SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
